UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ROBERT L. ARCTIC,

Petitioner,

v.

ROB MUNDT, WARDEN,

Respondent.

CIVIL NO. 01-1998 (RHK/FLN)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the Honorable John M. Mason, United States Magistrate Judge on March 27, 2002 upon Petitioner's Application for Writ of Habeas Corpus. Katherine M. Menendez, Assistant Federal Public Defender appeared on behalf of Petitioner; James Lackner, Assistant U.S. Attorney appeared on behalf of Respondent. The matter is now before the undersigned Magistrate Judge for a Report and Recommendation to the District Court pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B). This Court has reviewed the parties' memoranda and has listened to the tape recorded record of the argument had before Magistrate Judge Mason on March 27, 2002.[1]

Upon the following Findings of Fact, it is recommended that Petitioner's Application [Docket No. 1] be denied.

[1]Magistrate Judge Mason died on June 8, 2002, without having issued a Report and Recommendation. The case was reassigned to Magistrate Judge Noel on June 18, 2002.

AUG 1 2 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

## FINDINGS OF FACT

### I. BACKGROUND

Petitioner Robert Arctic is an inmate at the United States Bureau of Prison's ("BOP") Federal Correctional Institution in Waseca, Minnesota. He is currently serving a 112-month sentence following a 1995 conviction for conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Petitioner's sentence was enhanced because he possessed a firearm during the commission of the offense. Petitioner's projected release date is April 10, 2003.

In November 1995, Petitioner began participating in a BOP residential drug treatment program. Under 18 U.S.C. § 3621(e)(2)(B), "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the [BOP]" by up to one year. In January 1996, however, the BOP evaluated Petitioner's background and determined that he was ineligible for early release consideration even if he were to complete a residential drug treatment program. The BOP's determination was based upon BOP Program Statement 5162.02, Section 9 which provides that an inmate whose sentence was enhanced for possessing a firearm is considered to have committed a crime of violence and therefore is ineligible for early release. Despite that determination, on August 9, 1996, Petitioner completed the drug treatment program.

In February 1997, Petitioner engaged in a fight with another inmate in violation of the drug treatment program's policies. According to the Government, the fight provided the BOP an additional independent basis for determining that Petitioner was

ineligible for early release consideration.[2]

In August 2000, the BOP again evaluated Petitioner's background at his request and determined that he remained ineligible for early release consideration should he complete another drug treatment program. This determination was based upon BOP Program Statement 5162.04.[3] Despite the BOP's determination, on February 22, 2001, Petitioner re-entered the BOP's residential drug treatment program which he successfully completed on November 20, 2001.

Now before the Court is Petitioner's Application for Habeas Corpus relief. Petitioner contends that Program Statements 5162.02 and 5162.04 violate the notice and comment requirements of the Administrative Procedure Act ("APA") because they constitute new substantive rules, rather than interpretive rules, that prohibit him from being considered for early release following his completion of the drug treatment programs. Petitioner seeks an order invalidating the Program Statements. The Government contends that Petitioner's claims were previously adjudicated by this Court in Arctic v. Tippy, No. 3-96-1192 (RHK/JMM) (Dist. Minn. Mar. 20, 1997), and are thus barred by estoppel doctrines. The Government further contends that the validity of the BOP's interpretation of Program Statement 5162.04 and the BOP Director's discretion in denying inmates early

---

[2]BOP Program Statement 5330.10 provides, in relevant part, that an inmate shall lose his or her release eligibility immediately if he or she is found to have been violent against another inmate.

[3] As discussed in greater detail later in this Report and Recommendation, PS 5162.04 is an amended version of PS 5162.02. It relies upon the BOP Director's discretion, and not an interpretation of the phrase "non-violent offense", as its basis for denying inmates like Petitioner early release consideration.

release based upon possession of a firearm have been upheld by the Supreme Court.

## II. PROCEDURAL HISTORY

Prior to filing the current Application, Petitioner brought another action in this Court challenging the BOP's determination that he was not eligible for early release consideration based upon his weapon possession sentencing enhancement. There, he argued that "mere possession of a weapon, without more, [could not] be viewed as a crime of violence" which would bar him from consideration for early release upon completion of a drug treatment program. This Court, however, rejected Petitioner's claim. See Arctic v. Tippy, Report and Recommendation, No. 3-96-1192 (RHK/JMM) (D. Minn. Jan. 2, 1997). The District Court adopted the Report and Recommendation and denied the Petition. See Arctic v. Tippy, Memorandum Opinion and Order, No. 3-96-1192 (RHK/FLN) (D. Minn. Mar. 20, 1997).

On appeal, the Eighth Circuit reversed the District Court, and remanded the case with instructions to refer the matter back to the BOP to properly consider Petitioner's eligibility for a sentence reduction in light of the Eighth Circuit's decision in Martin v. Gerlinski, 133 F.3d 1076 (8th Cir. 1998). Pursuant to the Eighth Circuit's directions, the BOP re-considered Petitioner's eligibility for early release and determined that notwithstanding the Eighth Circuit's decision in Martin, Petitioner still remained ineligible for early release consideration because of his 1997 fight.

Thereafter Petitioner re-enrolled in the drug treatment program which he successfully completed in November, 2001. He was nevertheless denied early release based upon Program Statement 5162.04 by which the Director of the BOP has exercised his discretion to deny early release to any inmate whose offense conduct involved

possession of a gun.

Petitioner is now before the Court arguing that the BOP failed to comply with the procedural requirements of the APA when it promulgated Program Statements 5162.02 and 5162.04.

## III. HISTORY OF THE CHALLENGED PROGRAM

As an incentive for prisoners' successful completion of residential drug treatment programs, Congress enacted 18 U.S.C. § 3621(e)(2). Generally, Section 3621(e)(2)(B) provides that prisoners convicted of nonviolent offenses that complete a residential drug treatment program may be considered for early release. In 1995, the BOP promulgated an interim regulation to offer guidance as to its interpretation of the term "nonviolent offense" as it is used in Section 3621(e)(2)(B). That regulation, codified at 28 C.F.R. § 550.58, equated the term nonviolent offense with every offense that did not fit within the definition of the term "crimes of violence" contained in 18 U.S.C. § 924(c)(3). Contemporaneously, the BOP issued Program Statement 5162.02 that provided a more extensive list of offenses that would not qualify as nonviolent offenses.

Inmates across the country filed challenges to that program statement and some Circuits, including the Eighth Circuit, invalidated Program Statement 5162.02 and held that Section 3621(e)(2)(B) required that the BOP look only to the offense of conviction in determining whether an inmate was eligible under the statute for early release. See, e.g., Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998); Fristoe v. Thompson, 144 F.3d 627, 631 (10th Cir. 1998); Byrd v. Hasty, 142 F.3d 1395, 1398 (11th Cir. 1998);

Rousos v. Menifee, 122 F.3d 159, 164 (3rd Cir. 1997); Downey v. Crabtree, 100 F.3d 662 (9th Cir. 1996). The Fourth and Fifth Circuits, however, upheld the BOP's classification of drug offenses attended by firearms possession as violent crimes. See, e.g., Pelissero v. Thompson, 170 F.3d 442, 447 (4th Cir. 1999); Venegas v. Henman, 126 F.3d 670, 763 (5th Cir. 1997).

In October 1997, the BOP promulgated a new Program Statement 5162.**04** "[t]o assist with the implementation of various [BOP] policies and programs," including its residential drug treatment program. Six days after issuing Program Statement 5162.04, the BOP published an amended version of the regulation, which was codified at 28 C.F.R. § 550.58. This version of the regulation provided that, as an exercise of the Director's discretion, certain categories of inmates were not eligible for early release, including those whose current offense was a felony "that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives . . . or . . . that by its nature or conduct, presents a serious potential risk of physical force against the person or property of another." See 28 C.F.R. § 550.58 (1997). Thus, the new program statement provides that the BOP may deny early release consideration for felons with weapons possession enhancements based upon the Director of the BOP's discretion granted under 18 U.S.C. § 3621(e),[4] rather than definitions of the terms "nonviolent offense" or "crime of violence." Although the new regulation and program statement are premised upon different bases

---

[4] 18 U.S.C. § 3621(e)(2)(A) grants the Director of the BOP such discretion and generally provides that: "[a]ny prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment . . . shall remain in the custody of the Bureau under conditions as the Bureau deems appropriate."

than the previous program statement and regulation, the new standards have the same practical effect as their predecessors.

The Supreme Court recently found Program Statement 5162.04 and C.F.R. 550.58 substantively sound. See Lopez v. Davis, 531 U.S. 230, 238, 121 S.Ct. 714, (2001). The Lopez court, however, refused to consider whether the regulation and program statement were on firm ground procedurally because that issue was not raised in the Lopez case. Id. at 244 n. 6.

## IV. MERITS OF PETITIONER'S CHALLENGE

Petitioner contends that Program Statement 5162.02 and its progeny Program Statement 5162.04 were promulgated in violation of the APA. He asks that this Court strike down the Program Statements because they violate his substantial rights. The Government contends that Petitioner's claims regarding Program Statement 5162.02 are barred by the doctrines of res judicata, collateral estoppel and issue preclusion.[5] The Government further contends that Program Statement 5162.04 is an interpretive rule that is exempt from formal compliance with APA requirements and to the extent that Petitioner challenges the notice and comment procedures for the BOP's substantive requirements, the BOP complied with the APA's requirements and had good cause for implementing the Program Statement as it did. Since each of the issues raised by the parties requires a

---

5

The doctrines of collateral estoppel and issue preclusion are one in the same. See W.F.M., Inc. v. Cherry County, 279 F.3d 640, 643 (8th Cir. 2002) (the doctrine of "issue preclusion, also known as collateral estoppel," provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case") (citing Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). Thus, we need not separately address the Government's arguments regarding each of the doctrines.

separate analysis, we consider them independently.

**A. Petitioner's Claims Regarding Program Statement 5162.02 Are Not Barred by the Estoppel Doctrines.[6]**

In his earlier Petition, Petitioner argued that "his statutory rights and due process rights were violated by [the] Bureau of Prisons' revocation of his eligibility for reduction of his period of custody under Statute 18 U.S.C. § 3621(e)(2)(b) . . . ." See Arctic v. Tippy, No. 3-96-1192, Petition for Habeas Corpus, at p. 2 (D. Minn. Dec. 23, 1996). The Government contends that the issue presented in Petitioner's 1996 petition mirrors one of the issues presented in his current petition, namely that Program Statement 5162.02 was not promulgated in compliance with the APA. Petitioner, however, contends that the issues in his first petition are distinguishable from the issues in his current petition because "[i]n his first habeas corpus petition, Petitioner addressed only the BOP's 1995 attempt to interpret the statutory term 'nonviolent offense'" whereas here he contends that "the BOP's program statement is in violation of the notice and comment requirements of the [APA] because the program statement is a substantive rule and not merely an interpretive one." (Petitioner's Objection(s) to Government's Petition at 1).

The doctrine of res judicata bars relitigation of a claim when a prior matter resulted in a judgment on the merits by a court of competent jurisdiction, adjudicated the rights of the same parties as those in the subsequent matter and involved the same nucleus of operative facts. Klob v. Scherer Bros. Fin. Serv., 6 F.3d 542, 544 (8th Cir. 1993). We are not convinced that Petitioner's current Petition is barred by res judicata.

---

[6]Program Statement 5162.04 had not been adopted at the time of Petitioner's earlier petition and was not litigated in any way (substantively or procedurally) during the prior litigation.

Although his prior petition was adjudicated on the merits and involved the same parties as the current Petition, the prior Petition did not involve the same nucleus of operative facts as the current Petition. As Petitioner correctly points out, his prior Petition addressed the appropriateness of the BOP's interpretation of the term "crime of violence." The current petition challenges whether the BOP complied with the notice and comment requirements of the APA. Thus, the doctrine of res judicata does not bar Petitioner's current claims.

It is well settled that the application of the doctrine of collateral estoppel is appropriate only where four elements exist to bar relitigation of a factual issue in a subsequent proceeding:

> (1) the issue sought to be precluded must be the same as that involved in the prior action;
> (2) the issue must have been litigated in the prior action;
> (3) the issue must have been determined by a valid and final judgment; and
> (4) the determination must have been essential to the prior judgment.

Lovell v. Mixon, 719 F.2d 1373, 1376 (8th Cir.1983); see also 1B J. Moore, J. Lucas, T. Currier, Moore's Federal Practice, ¶ 442[1] (1988). The party asserting collateral estoppel has the burden of proving that all four elements apply. Spilman v. Harley, 656 F.2d 224, 229 (6th Cir. 1981). To determine whether an issue was actually litigated and was necessary to the decision in the prior action, the court should examine the entire record of the earlier proceeding. See Spilman, 656 F.2d at 228; In re Lee, 90 B.R. 202, 205 - 06 (Bankr. E. D. Va. 1988). Collateral estoppel may only be applied if the party against whom the earlier decision is being asserted had a "full and fair" opportunity to litigate the issue in the prior adjudication. Lovell, 719 F.2d at 1376.

As with res judicata, we are not satisfied that Petitioner's claim is barred by the doctrine of collateral estoppel. As discussed above, the issue raised in the current Petition is not identical to the issue raised in Petitioner's prior Petition. Thus, Petitioner's current challenge was not litigated in his prior Petition and is not barred by the doctrine of collateral estoppel.

**B. Petitioner's Procedural Challenge Under The Administrative Procedures Act to Program Statement 5162.02 Is Moot.**

Petitioner contends that the BOP failed to comply with the notice and comment requirements of the APA, although it expressly invoked the APA in promulgating Program Statement 5162.02.

Petitioner's procedural challenge to Program Statement 5162.02 is moot because he was already granted relief on the merits of his challenge to this earlier Program Statement. In Arctic v. Tippy, No. 3-96-1192, the Eighth Circuit remanded the case with instructions to refer the matter back to the BOP to consider Petitioner's eligibility for a sentence reduction in light of the Eighth Circuit's decision in Martin v. Gerlinski, 133 F.3d 1076 (8th Cir. 1998). In Martin, the Eighth Circuit held that the BOP's policy, under Program Statement 5162.02, of considering sentencing factors in determining whether an inmate's offense was nonviolent was contrary to the early release statute. The Government cannot and does not rely upon the substance of Program Statement 5162.02 to justify its decision to deny Petitioner early release following the remand from the Eighth Circuit. Having prevailed on the merits of his substantive challenge to Program Statement 5162.02, his procedural challenge is moot.

The Government can prevail in its decision to deny Petitioner early release,

only if it can establish that the decision was justified by something other than Program Statement 5162.02.

**C. The BOP Lawfully Relied Upon Petitioner's Involvement In A Fight To Deny Him Early Release Following Remand.**

According to the Government, the BOP had an additional independent basis for denying Petitioner's first request for consideration for early release (after being ordered to reconsider the request by the Eighth Circuit). The Government contends that Petitioner was denied early release following the remand from the Eighth Circuit, not because of Program Statement 5162.02, but because he fought with another inmate. The Government has submitted evidence to establish that in February 1997, Petitioner was disciplined for fighting with another person. This conduct clearly violated Program Statement 5330.10, which allows for immediate removal from the program if the participant is found to have been violent or threatened violence against staff or another inmate. Petitioner does not challenge Program Statement 5330.10. The BOP decision to deny early release to Petitioner following remand from the Eighth Circuit does not entitle Petitioner to any habeas corpus relief.

**D. The BOP Properly Relied Upon Program Statement 5162.04 To Deny Early Release After Petitioner Completed The Program A Second Time.**

In August, 2002, the BOP denied Petitioner's most recent request for consideration for early release. This decision was based upon Program Statement 5162.**04**, not Program Statement 5162.**02**. Program Statement 5162.**04** was in effect at the time Petitioner completed his second residential drug treatment program. The

Supreme Court determined in Lopez that Program Statement 5162.**04** is substantively sound. Here, we focus our analysis upon the question left open in Lopez, whether Program Statement 5162.**04** was adopted in violation of the APA. Program Statement 5162.**04** was adopted as an interim rule in October 1997, and implemented immediately.

The Government contends that it was exempt from compliance with APA based upon the good cause exception provided under 5 U.S.C. § 553 (b)(B).

The rule making provisions of the APA provide, in relevant part, as follows:

> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law.
>
> Except when notice or hearing is required by statute, this subdivision does not apply -
>
> (A) to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice; or
>
> (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

5 U.S.C. § 553(b).

Program Statement 5162.**04** was adopted as a final rule in December 2000, after the agency had received over 150 comments. The terms of the final rule were identical to the terms of the interim rule adopted in October 1997.

Courts have upheld an agency's finding of good cause where an emergency situation existed. See, e.g., Texaco, Inc. v. Federal Energy Admin., 531 F.2d 1071 (Temp. Emer. Ct. App. 1976). Other courts have closely guarded the 30-day requirement and held

that the good-cause exception should be sparingly applied. See, e.g., Texaco, Inc. v. Federal Power Comm., 412 F.2d 740 (3d Cir. 1969).

The Eighth Circuit has noted that the legislative history of the APA "reveals that the purpose for deferring the effectiveness of a rule under § 553(d) was to 'afford persons affected a reasonable time to prepare for the effective date of a rule or rules or to take other action which the issuance may prompt.'" United States v. Gavrilovic, 551 F.2d 1099, 1104 (8th Cir. 1977). The Eighth Circuit further noted that:

> The legislative history also indicates the APA was not intended to unduly hamper agencies from making a rule effective immediately or at some time earlier than 30 days. However, proponents of the bill make clear that the good cause exception was not to be an "escape clause which may be arbitrarily exercised but requires legitimate grounds supported in law and fact by the required finding." Legitimate grounds were defined as an "urgency of conditions coupled with demonstrated and unavoidable limitations of time," and that the primary consideration was to be the "convenience or the necessity of the people affected."

Id. (internal citations omitted).

In this case, the Government contends that the BOP had good cause for implementing Program Statement 5162.04 prior to the completion of the notice and comment period because "inmates have different release dates and the BOP was required to work within various time frames to carry out its statutory mandates and to ensure that qualified inmates who met the criteria established by the BOP received the benefit of early release." Although the Court can appreciate that the BOP may have been concerned regarding the existing state of the program since courts were reaching conflicting decisions concerning the validity of Program Statement 5162.02, we are not satisfied that those conflicting decisions were sufficient to constitute urgency of conditions coupled with

demonstrated and unavoidable limitations of time so as to avoid the notice and comment requirements of the APA.

This violation of the APA, however, does not entitle Petitioner to any habeas corpus relief. By the time the BOP finally denied Petitioner early release in October of 2001, Program Statement 5162.**04** had been adopted as a final rule in December 2000, after the agency had received over 150 comments. The final rule was identical to the interim rule which had been adopted in October 1997. The rule on which the BOP relied to deny Petitioner early release following his second participation in the program was adopted in full compliance with the APA.

In King v. Morrison, 231 F.3d 1094 (8th Cir. 2000), the Eighth Circuit addressed an inmate's claim under the prior Program Statement 5162.**02**. In rejecting the Government's argument in support of the old rule, the Eighth Circuit observed that its decision in Bellis v. Davis, 186 F.3d 1092 (8th Cir. 1999),[7] would have controlled the outcome if King had completed his drug rehabilitation program after October 1997, when the BOP adopted its new Program Statement 5162.**04**. Said the Court:

> "That regulation [5162.04], which was subject to the notice and comment procedure, was not in effect at the time that King began the drug abuse treatment program; nor when he successfully completed the program in April 1997."

As Petitioner here was denied early release under the new Program Statement 5162.04 in 2001, well after the new rule became final, there was no reason not

[7]Affirmed subnon Lopez v. Davis, 531 U.S. 230 (2001). The Supreme Court's Lopez decision is the same case the Eighth Circuit decided under the name Bellis v. Davis, 186 F.3d 1092 (8th Cir. 1999). While neither Lopez or Bellis addressed the APA, the Eighth Circuit in King observed that the notice and comment procedure were followed with respect to the new Program Statement 5162.04.

to apply it to him.[8] Based upon the Eighth Circuit's observation in King, the Court rejects Petitioner's APA challenge to the new Program Statement 5162.04.

## RECOMMENDATION

For the reasons set forth above, it is recommended that Petitioner's Application for a Writ of Habeas Corpus be denied.

Dated: Aug 12, 2002

FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before 8/28, **2002** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before 8/28, **2002**.

[8]Although an initial decision had been made in August 2000 that Petitioner was ineligible for early release (before Program Statement 5162.04 became a final rule) in May 2001, the BOP determined anew that Petitioner was ineligible for early release. Petitioner took a series of appeals from the May 2001 decision, and it was finally decided in October 2001 that Petitioner was ineligible for early release by reason of Program Statement 5162.04, (nearly 10 months to the day after the rule had been finalized).